May it please the Court. Good morning. Steve Sadie and Lisa Ma from the Federal Public Defender's Office for Steven Rockett. These are two appeals, one involving the validity of the convictions, a separate appeal involving the restitution. Are you going to be arguing separately then? Yes, Your Honor. All right, before we start the clock, let's go back. So you have 15 minutes total. You don't have 15 minutes each. Understood. So how are you going to divide your time? In the acknowledgment for the hearing, we asked for nine minutes for the convictions, three minutes for the restitution, reserving three minutes for rebuttal. And if the court is more interested in pursuing the convictions, that we would be ceding that time. Okay. So after 12 minutes, then we're going to stop, leaving three minutes for rebuttal. And that three minutes, you're going to both decide how you're going to use it, who's going to argue it? I will. Okay. So you're going to take the three minutes on rebuttal. Yes, Your Honor. Okay. So when all right, and this will apply to the later case. Now, when you get to nine minutes, you're going to be sitting there and if he's just like talking and talking, you're going to be getting all nervous thinking, is he taking all of my time as far as that goes? You will get your three minutes. All right. If we're asking questions of you on the nine minute time, that will be on us. But I will otherwise cut you off at that point and say you're at nine minutes, get up for your three. Okay. So you'll get your three. You don't have to leap up and pull him off the podium if he's talking too long. All right. Okay. So let's go back on the clock. And then at nine minutes, expect to stop. Okay. Thanks. Thank you, Your Honor. Yeah, you can just put it at the nine, so that's great. Thank you. The main issue involves expansion of the term sexually explicit conduct beyond the plain meaning of the statute and beyond the definitional section that discusses lascivious exhibition. The district court broadened the scope of the statute to cover video voyeurism and pictures of naked minors, depending on subjective factors, whether intended or designed to elicit a sexual response. This court's precedent in this area has generally involved core lascivious exhibition, posing persons where the photographer has at least been in direct contact and been trying to emphasize the lascivious exhibition. So you're basically focusing on the six DOS or dosed factor? Yes. And our position is that it should be an objective standard, and that in any event, under these circumstances where there is not a posing, that this is an unprecedented area for this Court to be addressing in the first instance. I would refer back to Ferber, the initial Supreme Court case on child pornography, where the Court, anticipating overbreadth problems, stated that an expansive judicial construction could be cured on a case-by-case basis. And this is just such a case. In Hill, Judge Fisher wrote that the six DOS factors are neither exclusive nor conclusive nor necessarily applicable in every situation. And this is just such a situation where they should not apply. In Williams, the Supreme Court noted that to avoid vagueness and overbreadth, the statute required lascivious exhibition to involve the type of sexually explicit conduct similar to the others listed. They used the canon of construction that similar we have a list of terms that they should be close to the same type of conduct, and that's talking about intercourse, masturbation, bestiality, sadomasochism. And that what Williams says is that the lascivious exhibition connotes actual gender, and that's a different depiction of the sex act. Well, now, the government recently provided a supplemental citation from a recent Second Circuit case, U.S. v. Spoor, I believe. And the Court held that the six DOS factors should be considered by the jury in a child pornography production case only to the extent that it is relevant to the jury's analysis of the five other factors. So what's your — should we find the recent Second Circuit decision in Spoor instructive here, and how? I think we have applied it with a Rule 28J letter, and our position is that it's helpful, but it doesn't go far enough. I think that under Spoor, that this would require reversal, because instead of having the six factors as an independent basis for saying that nudity is sexually explicit conduct, that the — that in Spoor, they said that it only applies to qualify the first five. That's not what happened here. Here, it was substituting the DOS factors for the definition of lascivious exhibition. Under Spoor, we'd have to have a reversal, because it's unconstitutionally broad. But we think that the Whited case from the Supreme Court of Tennessee is the case that should really give this Court a lead on how to handle a case where it does not involve posing, where it involves simple nudity. In that case, the Supreme Court of Tennessee did a fast summary of all the litigation and all of the writing and the legislative history in this area, to conclude that when the Congress eliminated — they were considering the legislative history, whether to use this type of subjective intent to help to define lascivious conduct. And they eliminated that. No. This is a case where it goes to the constitutionality of the underlying conviction. On pages 6 and 7 of our reply brief, we cited to Ninth Circuit cases that provide for de novo review, where the essence of the claim is constitutional. And that is exactly what we're bringing to the Court. But what instruction had been proposed by your clients, then counsel? My clients, then counsel, provided three instructions, first citing DOS, then citing DOS with Wigand, and then citing DOS, Wigand, and Overton. None of them were non-DOS or get rid of the sixth. I would suggest that in the trial memo and in the Rule 29 argument, the defense counsel was clearly saying this is not covered by the statute. I concede that he did not go beyond what he should have as far as what the analysis of how the DOS factors applies. And I think that what the Court can see from Wigand is that this is an incredibly complicated area, but that once you've conducted that type of analysis, that the prohibition on overbroad statutes, on vague statutes, the narrow reading required, that this is, with de novo review. What's vague about a statute that emphasizes the intent of the viewer? And who, which viewer? Well, in this case, it's your client. Your client identified himself as the only viewer. What's the problem with that? I mean, I hear your arguments, but they strike me as pretty theoretical and not very practical in this context. They're extremely practical in this case because look how it was exploited. This case was decided on the basis of the sexual predilections of the individual and the hope that the jury would be as repelled by the conduct as I think the government's brief was hoping that you would be repelled by the conduct. Efficiently repelled, and why shouldn't we draw the logical inferences from that? Because it's a question of rule of law. There's a statutory definition that has to be narrowly construed. That's exactly what the Supreme Court said in Williams about this very definition. They recognized that this was an area that could be expanded so that the definition of the crime would be based on the mind of the accused. And that type of thought crime is not what is defined here. I'm not sure the risks are so much the mind of the accused, the mind of the viewer, but in this case the viewer is the accused. So some of the theoretical concerns I have difficulty understanding in the context of your client's case. I think it might be helpful to look at actus reus versus mens rea. Yes, he has to have an intent to create sexually explicit conduct images. That has to be defined by what's lascivious exhibition. If it is not going to that degree, it doesn't matter whether he has terrible, terrible thoughts about somebody who is fully clothed. But he's recording all these because when they're nude, either without their knowledge or asking them to send photos and all of that, for his own purient interest. So I am, you know, it's not like someone else sees a nude picture of a child that's not, and that they didn't take the picture and they weren't taking them for yourself, for themselves. That, your argument makes sense there. But he's doing it, you know, why else would he be doing it? For a crime to be not vague and defined by subjective factors that depend on, this is a crime if one person does it, but not if another person does it, that is, it splits off the actus reus. And I think the skilling case really helps us in terms of Well, when people have secret cameras or they're telling kids to send pictures and don't tell anyone and do all of that, it's not like you're being, you know, it's not like it's a dragnet to pull people in on a crime that they wouldn't know was a crime. He knows it's a crime. Yes, it's a crime of video voyeurism. It's punishable. It's, as some of the commentators, Professor Adler calls it, it's repulsive and creepy, but it's not manufacturing of child pornography, punishable by a mandatory minimum of 15 years. The statutes, federal statutes, have to be narrowly construed in order to, only when Congress has clearly and explicitly stated that they want to take federal criminal jurisdiction should that apply. Okay. I think we understand your argument and you've used your time. So now it would go to your colleague on the restitution issue. Good morning. Good morning. May it please the Court, Lisa Ma for Stephen Rockett on the restitution case. We agree that restitution for counseling and education is warranted, but we're challenging the legality of the amount. This Court and the Supreme Court, as well as the statute, require that the government show proximate causation and calculate the loss amounts with some reasonable certainty. But this is a pretty modest restitution award, and how do you distinguish this case from United States v. Doe, in which we upheld a restitution award for future counseling costs and education programs much bigger than this? Yes, Your Honor. First, even if the amount is small, the principle here is large. It involves statutory interpretation and the rule of law. Second, in Doe, there are two issues. First, about the future counseling. With respect to future counseling, for example, in Doe and in Laney, they awarded future counseling costs for six years into the future. And in Laney, that was because the psychiatrist testified that the treatment would take six years. And with counseling costs, it's easy to see the connection between the harm and the loss. It takes many years of counseling to get through trauma, and that's what the psychiatrist or psychologist testified to in those cases. But unlike the psychological losses, the educational losses in this case bear no reasonable relationship to the offense. In Doe, for example, a nonprofit agreed to monitor the children and to implement a catch-up program or GDED equivalency program. But in this case, there was no evidence that it would take, for example, GG, six years of schooling to catch up or to gain the equivalence of one year of missed schooling. So that's the disparity. So in Doe, there was testimony or evidence that it would take a certain amount of schooling for each child to catch up or achieve a GED equivalency. In this case, there wasn't evidence that each of the children would need that much education to catch up to the amount of schooling they missed. And indeed, there was no finding that MG or JDL missed any significant amount of schooling. What's the standard of review? The standard of review is set forth in United States v. Gateland, de novo for the legality of the restitution order and if the order is within statutory bounds for abuse of discretion with deference for factual findings and clear arbor review. So are you saying the high school and college for GG is abuse of discretion? No, Your Honor. We're contesting the legality of the restitution order, which is de novo review. In this case, the district court explicitly made reference to using tort principles. And tort principles for restitution by statute, by criminal statute, was explicitly rejected by the Supreme Court in Paroline v. United States. The Supreme Court explicitly said in Paroline at 1729, the Court is required to define a causal standard that affects the statute's purposes, not to apply tort law concepts in a mechanical way in the criminal restitution context. So in response to your question, in this case, the district court applied the wrong standard. The district court applied a standard with respect to tort law, not with respect to this Court's guidance and to this statute in particular. Okay. Unless there are further questions by the panel, you've used your time. Thank you. Good morning. Good morning. May it please the Court. Kelly Zusman appearing on behalf of the United States. The jury instruction we've been talking about this morning, the DOS factors, it was not only provided by the defendant, but the defendant embraced each and every one of those factors during his closing argument.  but the defendant embraced each and every one of those factors during his closing And he cited every single one of those factors, including the subjective intent factor. So to raise this for the very first time on appeal leaves this Court with virtually no record. He not only asked for them, he embraced them and he used them to the extent that he could. Now, the six DOS factors, we've got to go back to 1987 when this Court in Wigan said, look, we're determining what is lascivious. Because the claim there was that what's lascivious is unconstitutionally vague. And this Court said, no, it isn't. And it relied upon the six factors that Judge Simon gave in this case to determine that, in fact, the images in that case were lascivious. Now, since Wigan, this Court's adoption of those factors has spread throughout the country. Virtually every federal circuit court in the country now uses those DOS factors when there's a sufficiency allegation about whether or not these images constitute a lascivious exhibition. In fact, this Court specifically affirmed a DOS factor jury instruction in 1991 in Arvin. So regardless of the standard of review that we look at, we think it's invited error and plain error. Or if you even want to entertain their constitutional challenge and say it's de novo, there was no error. The defendant has not cited, nor has the government been able to find, any circumstance in which looking at a defendant's own subjective intent. And here, that's Mr. Rocket. He was the producer. He didn't possess this stuff. He didn't transport it. He created it. He hid the cameras. He barged into bathrooms with his camera clicking when the children who he invited to his hotel room were taking showers. It's his intent that we're looking at. And I'm not aware of any authority for the proposition that a criminal statute becomes unconstitutional by virtue of a jury examining the defendant's own state of mind. That makes no sense. All of the cases that the defendant cites that raise concerns about subjective intent focus on the intent of law enforcement. Look at the potential for arbitrary enforcement of the laws. That's not what we have here. The jury was properly instructed that it should consider, and if you look at the instruction Judge Simon gave, this is at ER 28, after listing all of the factors, he says, an image need not involve all of these factors to be a lascivious exhibition. In fact, jury, your determination should be based on the overall content of the image, taking into account the age of the minor. So the suggestion here that this jury was told that it could decide that these images constituted child pornography based solely on the defendant's subjective intent is simply wrong. That's not consistent with the instruction. We agree that the statute has both a subjective and an objective component, and both of those were met in this case, both for the production count, count one, which involved the children whose images he took surreptitiously in the Philippines. It involves the testimony of those children who came to the United States and described how Mr. Rocket would barge into the bathroom at the hotel and snapping photographs of them. It includes the images that he surreptitiously captured here in Oregon. So unless the Court has other questions, we think DOST has already been decided by this Court in both Wigand and Arvind and by the other Federal Circuit Courts to address it. There is nothing unconstitutional about asking a jury or other fact finder to look to those factors in deciding whether or not an image constitutes child pornography. Do you want to briefly address what your position is on did the government meet its burden to prove restitution is warranted for future college tuition costs, and is it sufficient simply to present testimony that the victim needs educational assistance and wants to go to college? And yes, Your Honor. There was more than sufficient evidence to support Judge Simon's finding on restitution. He heard not only from Dr. Harner, who explained that the harm that these particular—these are the four victims that we're talking about here were all from the Philippines. So none of the Oregon victims sought restitution in this particular case. So it was the four Philippine victims who, in fact, testified about their shame. And Dr. Harner said during her interviews with them, they explained that not only were they traumatized psychologically, but then they were stigmatized in their communities. That was why they were struggling to basically reincorporate back into their own local community. Dr. Harner explained that the educational expenses were needed to help them essentially change schools because they were no longer welcome or comfortable where they were because their local community all knew about what had happened to them with Mr. Rogers. Well, now, if you'd been—if you'd asked for $60,000 a year for each child, would that be different than what the request was here? What was the total amount requested? The total amount requested for all four was slightly over $22,000. So we're talking about a relatively modest amount. And, in fact, one of the victims, I believe it was NG, had asked for, I think, 10 years of educational expenses, and we trimmed that back to two. So there was tailoring that went on. These expenses were well justified, both by Dr. Harner's testimony and the testimony of the victims. Now, Your Honors, there were several other issues raised in the opening brief and the reply. Unless the panel has questions about any of those, I would submit. Any questions? Judge Fischer? No. No, thank you. We don't appear to have any additional questions. Thank you for your argument. Thank you, Your Honor. All right. So you have three minutes on rebuttal. Thank you, Your Honor. The government is telling us that the DAS factors are a great success that have been adopted throughout the country. That's just not the case. Read the Supreme Court of Tennessee's opinion in Whiten, and they show that the  government in their 28-J letter, again, shows an entirely different approach and critical approach to these factors that are judicially created add-ons to a statutory definition. Under those circumstances, the Court should stick to the objective standard that is set out in the definitional section and in Williams. And there's two — Wigan does not end this story whatsoever because, for one thing, the court in Hill has said — and this is Judge Fischer talking — that the DAS factors are not always applicable. And this is the classic case-by-case determination that should result in saying, no, they are not applicable, at least not the sixth factor under these circumstances. And we also know that it applies — Why not? Where the person involved is the viewer is the defendant. I'm having real trouble understanding why this case is one where the sixth factor wouldn't apply. Because nudity, nakedness is not lascivious exhibition. It doesn't matter who's looking at it or what they're thinking. It does not constitute a sexual conduct that is covered by Ferber, covered by Williams, covered by the plain meaning of the statute. And we know that because — Well, there are lots of gentlemen's clubs that suggest the contrary. People aren't going to these places. Your client wasn't looking at this picture to study anatomy. No, but he was not — and it may be video voyeurism, but that's different than being manufacturing of child pornography covered by a very explicit statute. And we know there's a difference for nudity because the author of Wigan, Judge Wigan Doe, a case cited on 41 and 42 of the opening brief, finds that there is not even sufficient information to get to the Dost analysis for some pictures involving nudity, child nudity, and on the other ones, finding that it's insufficient and throwing out the civil case. So we know that this is — that it's not any certainty. We are dealing with it in the first instance here, and the Court should follow, even in difficult circumstances, the requirement that there be narrow construction of criminal statutes, that vagueness be pulled in and not expanded by judicial construction. All right. Thank you. Thank you both for your arguments.
judges: Fisher, Clifton, Callahan